UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ARKIL JOHNSON,

                          Plaintiff,

v.

SUPERINTENDENT TIMOTHY HABLE, et al.

                          Defendant.

_____

**REPORT AND
RECOMMENDATION**

05-CV-00451(A)(M)

       This case was referred to me by Hon. Richard J. Arcara to conduct "all pre-trial matters", including to "hear and report upon dispositive motions" (Dkt. #22). Before me is defendants' motion for summary judgment (Dkt. #52).[1] For the following reasons, I recommend that defendants' motion be DENIED.

## BACKGROUND

       Plaintiff, an inmate, commenced this 42 U.S.C. §1983 action *pro se* against defendants, employees of the New York State Department of Correctional Services ("DOCS"). At all relevant times plaintiff was an inmate at the Southport Correctional Facility ("Southport").

       Plaintiff's complaint alleges that on November 2, 2002 defendants Hable and Lovejoy were placing handcuffs on him in his cell so that he could be transported for recreation. "When the cell gate opened plaintiff was suddenly attached [*sic*] by defendants Timothy Hable and defendant R. Lovejoy" (Dkt. #1, ¶15). Plaintiff alleges that "at no time was he resisting" (Id. at ¶17). Shortly after defendants Timothy Hable, and R. Lovejoy began their assault on plaintiff,

---

[1]      Defendants Peters and McGinnis were previously dismissed from the case (Dkt. #5).

defendants M. Chorney, J. Marshall, Sgt. John Osborne, Sgt. Franklin Raub, J. Page, M. Boulas, P. Byringtom, K. Houstter entered plaintiff's cell and assisted with the assault on plaintiff" (Id. at ¶17). "While plaintiff was lying on the Floor an unidentified prison guard applied leg iron [*sic*] on Plaintiff and Defendant K. Houstter[2] and Defendant M. Chorney lifted Plaintiff up on the bed at which time Plaintiff seen sharp object in defendant Timothy Hable's hand. He then grabbed plaintiff by the hair and cut him across the baseline of the forehead, which Plaintiff needed four stitches to secure" (Id. at ¶18).

In contradiction to plaintiff's version of events, defendants contend that "while [a] waist chain was being applied plaintiff violently raised his hands and arms, and attempted to turn toward Officer Hable and Lovejoy" (Dkt. #53, ¶3). "Plaintiff was given several direct orders to stop resisting, but did not comply" (Id. at ¶5). Defendants Boulas and Bryington responded to the scene, and as they attempted to take plaintiff out of his cell he "continued to resist, and he struck his forehead on the cell door frame causing an injury" (Id. at ¶8).

Plaintiff was examined by Agnes Peters, R.N., who noted the laceration on plaintiff's forehead as being between 6 and 8 millimeters in diameter with "some bruising . . . to the right of the laceration" and that he had two red marks on his spine (Id. at ¶¶9-12; Dkt. #55, Ex. A, Use of Force Report -Part B-Addendum). Plaintiff denied having any other injuries (Id. at ¶10). Plaintiff was transported to the hospital where four sutures were used to close the laceration (Dkt. #55, ¶¶7-10).

---

[2]     Defendant Kenneth Houser appears to have been incorrectly named in the Complaint as "Houstter" (Dkt. #60).

## DISCUSSION AND ANALYSIS

**A.      Summary Judgment Standard**

"Summary judgment is a drastic procedural weapon." Garza v. Marine Transport

Lines, Inc., 861 F. 2d 23, 26 (2d Cir. 1988). It is warranted "only if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.  The party seeking summary judgment has the burden to demonstrate that no

genuine issue of material fact exists.  In determining whether a genuine issue of material fact

exists, a court must examine the evidence in the light most favorable to, and draw all inferences

in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record

that could reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds,

316 F.3d 351, 354 (2d Cir. 2003).

However, while the moving party must demonstrate the absence of any genuine

factual dispute, the party opposing the motion "must do more than simply show that there is

some metaphysical doubt as to the material facts . . . . The nonmoving party must come forward

with specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial

Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Defendants have submitted a statement of undisputed material facts in accordance

with Rule 56.1(a) of the Local Rules of Civil Procedure (Dkt. #53).  Plaintiff has submitted an

"Affidavit in Support of Statement of Facts" (Dkt. #72).  Although not specifically delineated as

a Statement of Disputed Facts, because of plaintiff's *pro se* status, I will treat it as such. <u>See</u>

<u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir.2001) (The court has "broad discretion

to determine whether to overlook a party's failure to comply with local court rules"); <u>Pender v.</u>

<u>N.Y. Office of Mental Retardation & Developmental Disabilities</u>, 2006 WL 2013863, *1 n.1

(E.D.N.Y. 2006) ("Although the plaintiff did not specifically respond to defendants' Rule 56.1

Statement in the precise form specified by the local rule, the Court overlooks this technical defect

and reads plaintiff's responses liberally as he is *pro se*, and considers factual assertions made by

his affidavit with accompanying exhibits as contesting defendants' statement of material

undisputed facts, where his statements or evidence conflicts.").


**B.   Personal Involvement of Defendants Osborne, Marshall, Page,
Houser, and Chorney**

"Personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under §1983." <u>McKinnon v. Patterson</u>, 568 F. 2d 930, 934

(2d Cir. 1977), <u>cert. denied</u>, 434 U.S. 1087 (1978). "A defendant may be personally involved in a

constitutional deprivation within the meaning of 42 U.S.C. §1983 in several ways. [1] The

defendant may have directly participated in the infraction. [2] A supervisory official, after

learning of the violation through a report or appeal, may have failed to remedy the wrong. [3] A

supervisory official may be liable because he or she created a policy or custom under which

unconstitutional practices occurred, or allowed such a policy or custom to continue. [4] . . . [A]

supervisory official may be personally liable if he or she was grossly negligent in managing

subordinates who caused the unlawful condition or event" <u>Williams v. Smith</u>, 781 F. 2d 319, 323

(2d Cir. 1986).

1.   **Defendants Chorney and Houser**

These defendants argue that their lack of personal involvement in plaintiff's

alleged assault is established by the fact they are not mentioned in the Use of Force Report or

other documents created in connection with the incident (Dkt. #54, p. 6).  Defendant Chorney

has also submitted a declaration stating that he was assigned to the infirmary on the day of the

incident (Dkt. #58, ¶4) and defendant Houser states that "by the time [he] arrived, the plaintiff

was under control" (Dkt. #60, ¶5).  These allegations are in direct contradiction to plaintiff's

unambiguous statement that defendants Houser and Chorney "lifted [him] up on the bed at which

time . . . defendant . . . Hable . . . grabbed [him] by his hair and cut him across the baseline of the

forehead" (Dkt. #72, ¶VIII).  Accepting one statement over the other "would require me to weigh

evidence, which is not allowed on summary judgment".  <u>Odom v. Dixion</u>, 2008 WL 466255, *19

(W.D.N.Y. 2008) (Foschio, M.J.).  Accordingly, I recommend that this aspect of defendants'

motion be denied.

2.   **Defendants Osborne, Marshall and Page**

These defendants argue that they were only responsible for escorting plaintiff

from the shower to the infirmary after the use of force incident, and that no force was used during

the escort, and each has submitted a declaration to this effect (Dkt. #54, p. 7; Dkt. #62, ¶5; Dkt.

#63, ¶5; Dkt. #64, ¶5).  Again, this is in direct contradiction to plaintiff's unambiguous statement

that defendants Osborne, Page, and Marshall were among those who entered his cell and

participated in the assault (Dkt. #72, ¶VI).  Therefore, I find that plaintiff has raised a triable

issue of fact as to whether defendants Osborne, Marshall, and Page were involved in the alleged

assault.  Odom, supra, 2008 WL 466255 at *19.  Accordingly, I recommend that this aspect of

defendants' motion be denied.


C.      **Eighth Amendment:  Excessive Force**

       Plaintiff's Eighth Amendment excessive force claim contains both a subjective

and an objective requirement.  See Griffin v. Crippen, 193 F. 3d 89, 91 (2d Cir. 1999).  To meet

the subjective requirement, the inmate must show that the prison officials involved "had a

'wanton' state of mind when they were engaging in the alleged misconduct."  See Davidson v.

Flynn, 32 F. 3d 27, 30 (2d Cir. 1994).  "The wantonness inquiry turns on whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm. "  Blyden v. Mancusi, 186 F. 3d 252, 262 (2d Cir. 1999).  "Thus, the key inquiry . . .

is whether the alleged conduct involved unnecessary and wanton infliction of pain."  Sims v.

Artuz, 230 F. 3d 14, 21 (2d Cir. 2000).

       To meet the objective requirement, "the alleged violation must be 'sufficiently

serious' by objective standards."  Griffin, supra, 193 F. 3d at 91.  "The objective component is

context specific, turning upon contemporary standards of decency."  Id.  However, "the Eighth

Amendment excludes from constitutional recognition de minimis uses of physical force, provided

that the use of force is not of a sort repugnant to the conscience of mankind. "  Green v. Morse,

2005 WL 1490301, *2 (W.D.N.Y. 2005) (Siragusa, J.).  "Not every push or shove, even if it may

later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional

rights." Griffin, supra, 193 F. 3d at 91. "The malicious use of force to cause harm constitutes an

Eighth Amendment violation per se whether or not significant injury is evident." Id. "Thus, even

if the harm inflicted is not significant, if plaintiff can show malicious intent then the objective

prong will be almost always be satisfied." Green, supra, 2005 WL 1490301, at *3.

   While defendants rely on the fact that "plaintiff's only injury was a small

laceration to the left side of his forehead consistent with the reports that the plaintiff continued to

struggle as he escorted from the cell and struck his head on the cell door frame" to substantiate

that the amount of force used was *de minimis* (Dkt. #54, p. 8). However, "an Eighth Amendment

excessive force claim does not require any serious injury". Odom, supra, 2008 WL 466255, at

*19); see Griffin, supra, 193 F. 3d at 91; Scott v. Coughlin, 344 F. 3d 282, 291 (2d Cir. 2003)

(holding that it was erroneous for the district court to rely solely on medical records which

indicated only a slight injury to grant summary judgment in favor of defendants); cf. Sprau v.

Coughlin, 997 F. Supp. 390, 394 (W.D.N.Y. 1998) (Larimer, J.) (finding that the amount of force

used was *de minimis* where a lone officer "grabbed [plaintiff] behind the neck and hit him several

times across the neck and face and in the eye" and a subsequent medical report noted only a "a

small bump under plaintiff's eye").

   Accepting plaintiff's allegation that, in an unprovoked attack, a number of officers

assaulted him and cut his forehead with a knife while he was  handcuffed, a reasonable juror

could certainly find that defendants utilized excessive force. While "I am authorized to pierce

the veil of the complaint's factual allegations [and] dispose of some improbable allegations",

Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 470 (S.D.N.Y. 1998), on the record before me, I

do not find plaintiff's allegations to be "beyond belief" (Dkt. #54, p. 9).

   In view of the contradictory accounts of the incident, summary judgment is

inappropriate as to plaintiff's excessive force claims. See Odom, supra, 2008 WL 466255 at *19;

Bussey v. Cunningham, 2001 WL 1397858, *4 (W.D.N.Y. 2001) (Elfvin, J.) (denying summary

judgment where "the entire record . . . can be summarized as pitting plaintiff's word that the

beating was unprovoked and excessive versus defendants' word that the plaintiff had a weapon

and was violently resisting arrest"); Scott, supra, 344 F. 3d at 291 ("Although [plaintiff's]

evidence [in support of his excessive force claim] may be thin, his own sworn statement is

adequate to counter summary judgment in this case and must be weighed by a trier of fact.").

Accordingly, I recommend that this aspect of defendants' motion be denied.


**D. Qualified Immunity**

   Under the doctrine of qualified immunity, "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). But even

where a right is well established, an official defendant may enjoy qualified immunity "if it was

objectively reasonable for him to believe that his acts did not violate" that right. Frank v. Relin, 1

F.3d 1317, 1328 (2d Cir.1993).

   It is undisputed that the right under the Eighth Amendment to be free from

excessive force is clearly established. Given the issues of fact as to what transpired, which

cannot be resolved on this motion for summary judgment, defendants are not entitled to summary

judgment based on the defense of qualified immunity. See Odom, supra, 2008 WL 466255, at

*23. Accordingly, I recommend that this aspect of defendants' motion be denied.


## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment be

DENIED. Accordingly, pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the

Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the

Clerk of this Court within ten (10) days after receipt of a copy of this Report and

Recommendation in accordance with the above statute, Rule 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider de novo arguments, case law

and/or evidentiary material which could have been, but was not presented to the magistrate judge

in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric

Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of

such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140

(1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the

Western District of New York, "written objections shall specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for such

objection and shall be supported by legal authority." <u>Failure to comply with the provisions of</u>

<u>Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a</u>

<u>Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to</u>

<u>consider the objection.</u>

**SO ORDERED.**

DATED:        August 1, 2008

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge